## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**HUMIDITY MEDIA, LLC d/b/a**                      **CIVIL ACTION**
**ATMOSPHERE DRONES**

**VERSUS**

**RHODA STREET STUDIOS, LLC**                      **NO. 22-00912-BAJ-SDJ**

### RULING AND ORDER

Before the Court is Defendant Rhoda Street Studios, LLC's **Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 7)**. Plaintiff opposes Defendant's Motion (Doc. 18), and Defendant filed a reply memorandum in further support of its Motion. (Doc. 20). For written reasons herein, the Motion is denied.

### I. BACKGROUND

The following facts are accepted as true for present purposes:

Plaintiff Humidity Media, LLC, d/b/a Atmosphere Drones, is a Louisiana-based company that provides "drones and cameras to take aerial photographs or videos…as well as drone pilots [who are] qualified to operate the drones." (Doc. 18-1 at p. 1). Paul Charbonnet is Plaintiff's owner and manager. (*See id.*). Defendant Rhoda Street Studios, LLC is a California-based documentary filmmaking company. (*See* Doc. 20-1, ¶ 2). Eric Rey is Defendant's sole member and officer. (*See id.*, ¶ 1).

On a date not provided in the Parties' pleadings, Defendant was hired "to film a new production [about] the operations of a scallop fishing vessel called the *F/V FINESTKIND* in April to May of 2022, 100 miles off of the coast of New Bedford, Massachusetts" (the Project). (*See id.*, ¶ 4). On April 7, Rey called Charbonnet to

discuss the possibility of Defendant renting drone equipment from Plaintiff for the Project. (*See id.*, ¶ 5). During the call, Charbonnet offered himself as a drone pilot for the Project. (*See id.*).

On April 14, Rey and Charbonnet spoke again and "agreed to a project fee of $25,000, including rate and gear." (Doc. 7-1 at p. 1). Rey memorialized the details in follow-up emails and confirmed the Project's dates:

> Depart: 4/22
> Prep: 4/23
> Film: 4/24–5/1 (approx. 7 days weather dependant [sic])
> Return home: 5/2 (latest 5/4)

(Doc. 18-7 at p. 3).

Later that day, Charbonnet emailed Rey with Plaintiff's standard written contract. (*See* Doc. 19-1 at p. 2; Doc. 20-1, ¶ 8). Relevant here, the contract included a forum selection clause:

> This Agreement shall be governed by the laws of the State of Louisiana. Client agrees that the Courts located in Saint Francisville, Louisiana shall have exclusive jurisdiction over any and all claims arising from this Agreement or the relationship between Humidity Media, LLC d/b/a Atmosphere Drones and Client. Any and all such suits arising out of this Agreement or the relationship between Humidity Media, LLC d/b/a Atmosphere Drones and Client shall be heard in any court in West Feliciana Parish having jurisdiction over this Agreement.

(Doc. 18-3 at p. 6).

On April 15, having not yet received the signed contract from Rey, Charbonnet emailed him, "Just want to make sure everything is all good before I ship the [drone] batteries." (*See* Doc. 18-7 at p. 5). Rey responded, "Yes [sic] I'm still waiting to hear back from legal [sic] but I don't expect any changes and we should be good to move

2

forward. Thank you!" (*See id.* at p. 6). Charbonnet then wrote back, "Copy that. I'll ship them out. Thanks." (*Id.*).

On April 19, Rey returned the unsigned contract to Charbonnet with handwritten modifications and edits in black ink from Defendant's legal counsel. (*See* Doc. 20-1, ¶ 8). Significantly, there were no modifications or edits to the forum selection clause. (*See* Doc. 18-4 at p. 6).

Shortly after, Charbonnet returned the contract with Plaintiff's responses to Defendant's revisions in red ink. (*See* Doc. 18-5). Once again, there were no modifications or edits to the forum selection clause. (*See id.* at p. 6). In his cover email, Charbonnet wrote, "Thanks, [Rey]. For the most part I'm good with the changes. There are [a] few things that we 100% have to have to make it work. I have marked in red the parts that have to stay." (Doc. 19-1 at p. 3).

Charbonnet also sent Rey the following text message:

So just relied [sic] back with some things.

And not to put pressure on you but we [sic] on a shot [sic] in FL right now and I was going to fly back early on a 6 p [sic] flight back to Nola tomorrow so I can gear up and head up north. So ideally we can get this ironed out by 4:00 p tomorrow or I'll have to consider this a no go. Cause if I miss this flight there is no way I can be ready to fly out on the 22.

*Id.* Rey replied by text message, "I just looked over, should be good on most or all of it. I'll explain to my legal we need to push forward with it. Thanks! (sorry for the legal back and forth.)" (Doc. 19-1 at p. 4).

However, by 4:00 p.m. on April 20, Charbonnet had not received the signed agreement. Accordingly, he emailed Rey and wrote, "So since I didn't get a sign [sic]

3

agreement in time to make my flight I unfortunately will not be able to make the shoot. I was really excited about this project and do wish y'all the best on it … [sic]." (Doc. 19-1 at p. 4). In response, Rey immediately emailed back a signed copy of the contract ("the April 20th Contract"). (*See id.*; Doc. 18-6). The contract was not retyped or reformatted to incorporate the Parties' revisions. (*See id.*). Instead, Rey signed it on behalf of Defendant and sent the version that included Defendant's handwritten edits and Plaintiff's typed edits. (*See id.*). Under each of Plaintiff's edits, Rey initialed "OK–ER" to indicate approval of Plaintiff's changes to the contract terms. (Doc. 18-6). Critically, there were no edits to the forum selection clause. In his cover email, Rey wrote, "Hi Paul. Here is the signed agreement. Thank you!" (Doc. 19-1 at p. 4). Upon receipt of the April 20 Contract, Charbonnet packed up Plaintiff's drone equipment for the job and flew to Massachusetts. (*See id.*).

Once Charbonnet arrived and filming for the Project got underway, the production went south. (*See id.* at p. 5). Conditions at sea were such that Charbonnet could not film with the drones. (*See id.*). He also became "deathly seasick." (*Id.*). Rey became concerned that if Charbonnet's illness required medical treatment, he could be deemed Defendant's employee with a right to workers' compensation. (*See* Doc. 18 at p. 8).

On a date not provided in the Parties' pleadings, but while Charbonnet was still at sea, Rey emailed him Defendant's Vendor Agreement (Doc. 9-5). (*See* Doc. 18 at pp. 8–9). The Vendor Agreement stipulated that while Charbonnet is an independent contractor and not Defendant's employee, Defendant will nonetheless

4

assume all obligations with respect to workers' compensation premiums. (*See* Doc. 9-5, ¶ 5). Notably, the Vendor Agreement does *not* contain a forum selection clause but does include a merger clause, which states, in relevant part:

> If an authorized representative of Company [Defendant] signs another agreement provided by Vendor [Plaintiff] containing any terms or conditions that are in any way inconsistent with terms and conditions of this Agreement, the terms and conditions of this Agreement shall supersede and continue to determine the rights and obligations of the parties in connection with the subject matter hereof.

(Doc. 9-5, ¶ 11). The parties dispute whether Charbonnet ever signed the Vendor Agreement. (*See* Doc. 7-1 at p. 9; Doc. 9-6; Doc. 18 at p. 10; Doc. 18-9; Doc. 19-1).

Charbonnet's health did not improve, so on April 29, Rey arranged his return to land. (*See* Doc. 18-8 at pp. 7–13). On May 4, Charbonnet notified Rey that some of Plaintiff's drone equipment was damaged during the Project. (*See* Doc. 18-7 at pp. 10–12). As Charbonnet and Rey attempted to resolve this issue, communications between them grew tense. (*See* Doc. 18 at p. 11). On May 20, 2023, Charbonnet sent Rey an email that said, in relevant part, "Please keep in mind that even though you added notes to the [April 20 Contract] those notes are not binding as I did not sign the contract to agree to the notes you proposed." (Doc. 9-4).

Ostensibly, communications between Charbonnet and Rey broke down. Plaintiff was never paid for the drone rental or Charbonnet's services as drone pilot.

## II.  PROCEDURAL HISTORY

Plaintiff initiated this action on October 17, 2022, in the 20th Judicial District Court for the Parish of West Feliciana, seeking, *inter alia*, $587,228.72 in damages for unpaid rental fees, damaged equipment, and unpaid drone pilot fees. (*See* Doc. 1-1

5

at p. 2). On November 23, Defendant timely removed Plaintiff's action to this Court. Defendant now moves to dismiss Plaintiff's action for lack of personal jurisdiction. (Doc. 7-1 at pp. 3, 7). Plaintiff responds that personal jurisdiction is satisfied because "the parties entered into a contract containing a forum selection clause pursuant to which the parties agree on a Louisiana forum." (Doc. 18 at p. 1 (*citing* Doc. 18-6, ¶ 17)).

### III.  DISCUSSION

#### A. Legal Standard

Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). "The plaintiff bears the burden of establishing [personal] jurisdiction, but need only present *prima facie* evidence." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). In considering a motion to dismiss for lack of personal jurisdiction, the Court must accept the plaintiff's "uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

> Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper. Often, the determination of whether this standard is met is resolved at trial along with the merits. This is especially likely when the jurisdictional issue is intertwined with the merits and therefore can be determined based on jury fact findings.

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008)

A federal district court sitting in diversity may exercise personal jurisdiction

6

over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the U.S. Constitution. *Revell*, 317 F.3d at 469. Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction over Defendant would offend federal due process. *See Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. R.S. § 13:3201(B)).

> The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) "that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" Sufficient minimum contacts will give rise to either specific or general jurisdiction. "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" Specific jurisdiction arises when the defendant's contacts with the forum "arise from, or are directly related to, the cause of action."

*Revell*, 317 F.3d at 470 (footnotes omitted).

However, "[p]ersonal jurisdiction can be waived by an enforceable forum selection clause in which the parties consent to personal jurisdiction in a specified forum." *Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 538 (S.D. Tex. 2017) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 465 n.14 (1985)). Federal law governs the enforceability of forum selection clauses and confers a presumption of validity. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997) (*citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10–15 (1972)).

7

### B. Discussion

Guided by these principles, the Court concludes that, for present purposes, Plaintiff has met its burden to establish personal jurisdiction. The evidence reveals that Plaintiff has established a *prima facie* showing that Defendant waived personal jurisdiction by virtue of the forum selection clause in the April 20 Contract.

#### i. The April 20 Contract Is A Binding Agreement

Defendant argues that "the forum provision from the [April 20 Contract] . . . is not binding on Defendant as there was never an agreement as to that provision under Louisiana law." (*See* Doc. 7-1 at p. 8–9).

Under Louisiana law, "[a] contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made." La. Civ. Code art. 1927.

Here, the parties' negotiations unfolded in the usual way. Preliminary discussions by phone led to an agreed upon fee and dates for performance. (Doc. 18-1 at p. 1, ¶ 5; Doc. 7-1 at p. 1). Charbonnet sent Plaintiff's standard written contract to Rey. (*See* Doc. 19-1 at p. 2; Doc. 20-1, ¶ 8). Rey returned the contract with handwritten changes to the terms. (*See* Doc. 20-1, ¶ 8). Charbonnet responded with edits to Rey's changes. (*See* Doc. 18-5).

By this point, the parties' negotiations came perilously close to the date of performance. Charbonnet raised this issue in a text message to Rey, emphasizing that to make his flight to Massachusetts, the contract negotiations would have to be completed by the following day, April 20, at 4:00 p.m. (Doc. 19-1 at p. 4). When Charbonnet did not receive the signed agreement by 4:00 p.m., he emailed Rey, expressing his regret that he would not be working on the Project. (*Id.*). Rey immediately emailed back with a signed and initialed copy of the contract, writing, "Here is the signed agreement." (*Id.*).

Defendant concedes that Rey's delivery of a signed agreement "constitute[d] an offer under Louisiana law." (Doc. 20 at p. 5). But Defendant incorrectly argues that Charbonnet's next act—"flying to Massachusetts for the film project on behalf of Plaintiff"—did not constitute an acceptance of that offer. (*Id.*). To the contrary, because Rey's offer did not specify a manner of acceptance, under Louisiana law Charbonnet could accept by any word, deed, action, *or* inaction "clearly indicative of consent." *See* La. Civ. Code art. 1927; *see also Chaisson v. Chaisson*, 690 So. 2d 899, 901 (La. App. 2d. Cir. 1997) ("An offer may be accepted other than by sacramental words such as 'I accept your offer.'"). As such, Charbonnet accepted Rey's offer by his action. By initiating the performance required under the contract, Defendant's offer was accepted.[1]

---

[1] Defendant urges that Charbonnet's May 20 email to Rey, in which Charbonnet stated that the handwritten changes to the contract were not binding because he had not signed the contract, proves that there was no contract. (Doc. 20 at p. 6). But it only shows that both parties were mistaken as to Louisiana law: Charbonnet's actual performance, under these circumstances, constituted acceptance. *See* La. Civ. Code art. 1927.

9

When Charbonnet packed up his drone equipment and flew to Massachusetts, a contract was formed. This act "under the circumstances [was] clearly indicative of consent." La. Civ. Code art. 1927. The act indicated consent because Charbonnet had made clear that Rey's failure to sign the agreement was what stood in the way of his performance. (*See* Doc. 19-1 at p. 3 ("[I]deally[,] we can get this ironed out by 4:00 p[sic] tomorrow or I'll have to consider [the Project] a no go); *Id.* at p. 4 ("[S]ince I didn't get a sign [sic] agreement in time to make my flight I unfortunately will not be able to make the shoot.")). Once Rey signed the contract and initialed the handwritten changes, Charbonnet initiated performance. Notably, Rey did not protest when Charbonnet boarded the plane to Massachusetts and embarked on the scallop boat. Here, the circumstances allow an inference of a meeting of the minds between the parties. Thus, the Court finds that a valid contract was formed. *See, e.g.*, *Read v. Willwoods Cmty.*, 2014-1475, p. 5 (La. 3/17/15), 165 So. 3d 883, 887 (". . . [A]n enforceable contract requires a meeting of the minds.").

Defendant responds that even if the April 20 Contract is enforceable, it was superseded by the Vendor Agreement of April 26. (Doc. 7-1 at p. 9). However, there are two problems with this argument. First, a fact dispute exists regarding whether the Vendor Agreement was signed by Charbonnet. (*See* Doc. 7-1 at p. 9; Doc. 9-6; Doc. 18 at p. 10; Doc. 18-9; Doc. 19-1). This fact dispute is plainly intertwined with the merits of this case, and therefore cannot be resolved at this stage. *See Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) ("If … a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the

10

case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at trial." (quotation marks omitted)). Second, even assuming the Vendor Agreement was executed, its merger clause supersedes other agreements only when those agreements are "inconsistent" with the terms of the Vendor Agreement. (Doc. 7-1 at p. 9). Because the Vendor Agreement does not contain a forum selection clause, it is not inconsistent with the April 20 Contract, which does. *Cf. Pelletier v. Yellow Transp., Inc.*, 549 F.3d 578, 581 (1st Cir. 2008) (holding that later contract containing merger clause did not supersede earlier contract's arbitration provision because later contract did not address arbitration); *Ryan v. Buckley Sandler, LLP*, 69 F. Supp. 3d 140, 146 (D.D.C. 2014) (same, citing authorities).

### ii.   The Forum Selection Clause Is Enforceable

Having determined that the parties formed a contract on April 20, the Court turns to whether the contract's forum selection clause is enforceable. Again, federal law governs the enforceability of forum selection clauses and confers a presumption of enforceability. *See Haynsworth*, 121 F.3d at 962-63 (*citing M/S Bremen*, 407 U.S. at 10–15 (1972)).

> The presumption of enforceability may be overcome, however, by a clear showing that the clause is unreasonable under the circumstances. Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. The party resisting enforcement on these grounds bears a heavy burden of proof.

11

*Id.* (quotation marks and citations omitted)).

Here, Defendant makes at best a cursory attempt to contest the enforceability of the forum selection clause, but addresses none of the determinative factors identified by the Fifth Circuit. (*See* Doc. 7-1 at pp. 10–11). In any event, no such factors are present here. There is no evidence of fraud or overreaching. Nor has Defendant shown that it will be deprived of its day in court "because of the grave inconvenience or unfairness of the selected forum." *Haynsworth*, 121 F.3d at 962-63. Moreover, there is no indication that Louisiana law will deprive either party of a remedy or that enforcement of the forum selection clause would contravene a strong public policy of any state. To the contrary, the Louisiana Supreme Court has stated that "contractual forum selection clauses are *prima facie* valid" and "the freedom to contract is an important public policy." *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of La.*, 2013-1977, pp. 12, 17 (La. 07/01/14), 148 So. 3d 871, 878, 881. Because Defendant has not met its "heavy burden of proof" to resist enforcement, the forum selection clause in the April 20 Contract is enforceable. *Haynsworth*, 121 F.3d at 963. And because the forum clause is enforceable, personal jurisdiction is waived. *See Bar Grp.*, 215 F. Supp. 3d at 538 (*citing Burger King Corp.*, 471 U.S. at 465 n.14).

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Rhoda Street Studios, LLC's **Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 7)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 28th day of September, 2023

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**